Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2785 | **DATE** | 3/31/2003 |
| **CASE TITLE** | Vardon Golf Company, Inc. vs. Karsten Manufacturing Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion to Declare Conduct Exceptional Under § 285 and Bill of Costs

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Karsten's Motion to Declare Vardon's Conduct Exceptional under § 285 [Doc. 246] is granted. Karsten is permitted to recover its attorney's fees in the amount of $2,014,699.31. For the reasons stated in the attached memorandum opinion and order, Karsten's Bill of Costs is also granted in the amount of $100,900.86. Plaintiff Vardon is ordered to pay Defendant Karsten $100,900.86 in costs and $2,014,699.31 in attorney's fees.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | number of notices | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | MAR 31 2003 | | 291 |
| ✓ | Docketing to mail notices. | date docketed | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| jar/lc | courtroom deputy's initials | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| VARDON GOLF COMPANY, INC., | ) | |
| | ) | |
| | ) | **No. 99 C 2785** |
| Plaintiff, | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| v. | ) | |
| | ) | |
| KARSTEN MANUFACTURING | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |



### MEMORANDUM OPINION AND ORDER

On August 1, 2002, a jury returned a verdict in favor of Defendant Karsten

Manufacturing Corporation ("Defendant" or "Karsten"). Shortly thereafter, Defendant Karsten

moved for this Court to declare the conduct of Plaintiff Vardon Golf Company ("Plaintiff" or

"Vardon") exceptional so that Defendant can recover reasonable attorney's fees in this litigation

pursuant to 35 U.S.C. § 285. Defendant Karsten also seeks to tax its costs against Vardon as a

prevailing party under Federal Rule of Civil Procedure 54(d)(1) and Local Rule 54.1. To that

end, Karsten has submitted a Bill of Costs in support. Defendant's Motion to Declare Plaintiff's

Conduct Exceptional and the Bill of Costs have both been fully briefed and are currently before

the court.

### I.      MOTION TO DECLARE VARDON'S CONDUCT EXCEPTIONAL

This was a patent case. By statute, attorney's fees in patent cases can only be awarded in

"exceptional cases." 35 U.S.C. § 285. Generally, courts look to the conduct of the non-

prevailing party when determining whether a given case is exceptional. "'Among the types of

1

conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O. [Patent and Trademark Office], misconduct during litigation, vexatious or unjustified litigation, and frivolous suit.'" Amsted Indus. Inc. v. Buckeye Steel Castings, Co., 23 F.3d 374, 376 (Fed. Cir. 1994) (quoting Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989)).

In this case, the Court does not have to search the record exhaustively for evidence that would support a a declaration that this is an exceptional case. The jury, in its special verdict, found that the Bullet B-52 golf club was prior art and that Vardon, through Dillis Allen, "withheld the Bullet B-52 from the Patent Office to intentionally deceive the Patent Office." (Karsten Mot. Declare Vardon's Conduct Exceptional, Ex. B at 4–5.) "Inequitable conduct resides in the failure to disclose material information with an intent to deceive or mislead the [Patent and Trademark Office]." Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1256 (Fed. Cir. 1997) (citing J.P. Stevens & Co. v. Lex Tex, Ltd., 747 F.2d 1553, 1559-60 (Fed.Cir.1984)). As noted above, inequitable conduct before the Patent and Trademark Office supports a declaration of the case as exceptional.

As Vardon points out, "not every case deemed 'exceptional' must result in a fee award." Consolidated Aluminum Corp. v. Foseco Intern. Ltd., 910 F.2d 804, 815 (Fed. Cir. 1990). The Court finds that this exceptional case does support an award of reasonable attorney's fees. The jury determined that Defendant Vardon, through Dillis Allen, perpetrated a fraud on the Patent Office. Additionally, Vardon aggressively pursued the fraudulent patents in this litigation, at

2

times resorting to questionable litigation tactics.[1] This case presents both inequitable conduct

before the Patent Office and vexatious litigation tactics, so the Court finds that recovery of

reasonable attorney's fees is appropriate.

What remains is to sort out the proper amount of reasonable attorney's fees. Karsten's

motion "claims attorney's fees of $2,019,375.60 and related nontaxable expenses of

$259,890.25." (Joint Statement under LR 54.3, at 1.)  In response, Vardon suggests that the Court

should cap Karsten's attorneys fees at approximately 1 million dollars.  Vardon also provides

exhaustive specific objections to the time entries of Karsten's attorneys.  The Court will address

the proposed fee cap and the specific objections below.

### A.    Vardon's Proposed cap of $1 million dollars

While it would certainly be easier for the Court to simply declare Karsten's fees to be

valued at $1 million dollars without regard to the actual time spent and fees charged, Vardon has

offered no principled reason to do so.  The primary basis for Vardon's position is that Karsten

expended more attorney hours on this litigation than did Vardon.[2] (Joint Statement under LR

54.3, at 4)  Absent discovery disputes, the Court does not tell any party how to conduct itself

during litigation.  There is no basis to conclude that the amount of time spent by Vardon was

---

[1] The most egregious example would be the role of Scott Longueil.  In December 1999, Karsten deposed Scott Longueil, the son-in-law of Dillis Allen.  In his deposition, Mr. Longueil testified that he knew nothing about the case.  On July 2, 2002, Vardon represented to a different Judge on this Court in other litigation between the parties that Karsten was engaging in unnecessary depositions, including that of Mr. Longueil, who "knew virtually nothing about" the case. (Karsten Mot. Declare Conduct Exceptional, Ex. C, at 1.)  A few weeks later, during trial in this court, Vardon sought to have Mr. Longueil testify to corroborate Mr. Allen's testimony.

[2] Vardon spent 3,153.82 hours, Karsten spent 8,966.65 hours. (Joint Statement under LR 54.3, at 4)

3

more or less reasonable than the amount of time spent by Karsten in pursuit of their goals during this litigation. Karsten may have been motivated to expend more resources to defend against Vardon's infringement allegations than Vardon was to prove the infringement. The actual reason Karsten expended greater resources is immaterial; provided that the hours spent were spent reasonably, Karsten can recover their reasonable attorney's fees.

In support of its request for fees, Karsten presented to the Court portions of a report prepared by the American Intellectual Property Law Association that contained average costs of intellectual property litigation in Chicago. (Karsten's Mot. Declare Conduct Exceptional, Ex. D) According to the report, for patent infringement lawsuits with over $25 million at risk, the median cost is $3.5 million, and the middle range (25th percentile to 75th percentile) of these lawsuits cost between $2.5 million and $4.99 million. Vardon does not dispute that there was over $25 million at risk in this case. In light of this range, Karsten's request to receive just over $2 million in attorney's fees seems reasonable. For these reasons, the Court rejects Vardon's proposed cap on attorney's fees.

## B.    VARDON'S SPECIFIC OBJECTIONS

Vardon also registered specific objections to the attorney's fees Karsten seeks. Its specific objections can be grouped into three basic categories. First, Vardon objects to many of Karsten's requested hours as "excessive billing" on the primary basis that no attorney could reasonably bill more than 10 hours a day pretrial or 14 hours a day during trial. Second, Vardon objects to any attorney recovering fees for time billed in conference with another attorney unless every attorney attending the conference bills time for the conference; Vardon labels these hours "overbilled." Third, Vardon objects to fees for work performed by an attorney when the work

4

meets a similar description as work previously performed by another attorney because it is unnecessarily duplicative.

All three of these objections suffer from a similar problem as Vardon's proposed cap. Vardon wants to arrogate to itself the ability to determine the manner of its opponent's preparation for trial. If accepted, Vardon would be de facto setting the maximum number of hours its opposing attorney should be compensated for each day; the billing practices of its opposing attorneys; and the course of its opponents' litigation practices. Once the plaintiff sets the adversary system in motion with the complaint, it cannot determine the lengths to which the defendant will go to confront and defend against the allegations contained therein. The Court will nevertheless address the specific objections that occur within these categories, as well as all other objections that Vardon makes to Karsten's requested fees.

### 1.    Excessive Billing

Vardon objects to Karsten's attorneys fees on the sole basis of "excessive billing" more than 10 hours a day (or 14 horus a day during trial) many times.[3] As with its suggested cap on attorney's fees, Vardon asks this Court to ratify Vardon's own unilateral decision about a

---

[3]Vardon objects on the sole ground of "excessive billing" more than 10 or 14 hours a day: for David Roodman on: 8/16/99; 11/04/99 (listed twice); 11/12/99; 11/15/99; 11/16/99; 11/17/99; 11/30/99; 7/1–7/2/02; 7/8–7/10/02; 7/13–7/17/02; 7/22–7/24/02; 7/28–7/29/02; for Larry G. Kurland on: 11/18/99 (listed twice); 11/19/99; 11/25/99; 12/20–12/21/99; 1/4–1/6/00; 6/3/02; 6/5/02 (listed twice); 6/6/02 (listed twice); 6/13/02; 6/17/02; 6/18/02 (listed twice); 6/20/02; 6/24–6/27/02; 7/1–7/3/02; 7/8–7/12/02; 7/14–7/18/02; 7/21–7/26/02; 7/28–7/30/02; for R.G. Lancaster on: 11/4/99; 11/9/99; 11/12–11/13/99; 11/15–11/18/99; 11/22–11/23/99; 11/30/99; 12/1–12/2/99; 12/6–12/9/99; 12/13–12/15/99; 2/25/00; 2/28/00; 4/11/00; 4/14/00; 4/17/00; 4/27/00; 5/15–5/16/00; 7/11–7/13/00; 5/15/02; 5/13/02; 5/24/02; 5/30–5/31/02; 6/3/02–6/4/02; 6/13/02; 6/18–6/19/02; 6/26–6/28/02; 7/1/02; 7/3/02; 7/5/02; 7/12–7/14/02; and for R. Wizorek on: 12/3/99; 12/14/99; 2/24/00; 2/28/00; 5/15/00; 7/11/00; 7/13/00; 7/14/00; 6/6/01; 6/8/01; 6/3/02.

reasonable number of hours for an attorney to work in a given day. All of Vardon's objections on this lone basis are overruled. Vardon cannot arbitrarily set for its opponents the maximum number of billable hours in a day.

Vardon made additional objections on the basis of "excessive billing" that were supported by more than its arbitrary choice of a maximum number of reasonable hours. On a few occasions, Vardon objected on the basis of excessive billing when two attorneys' work descriptions were similar, but one spent more time performing the tasks than another. Vardon's recommendation in those cases is that the Court reduce the higher number of hours to correspond to the lower number of hours. Vardon's recommendation has no foundation. The descriptions that are ascribed to more than one attorney are not the type of tasks that could only be performed simultaneously, so there can be no valid inference that the attorneys spent the same amount of time working.[4] Moreover, it is unlikely that any two attorneys would perform similar tasks in the exact same amount of time. The objections on the basis of excessive billing for similar work are overruled.[5]

The final objections that fall under the label "excessive billing" demonstrate again the flaw that runs throughout Vardon's objections to the attorney's fees: its attempt to limit or control the opposing counsel's use of resources. Vardon objects to the presence of two of

---

[4]For example, Vardon objects to L.G. Kurland's billing of 16.30 hours on 6/6/2002 which he described spending as follows: "Review File History of prior art patents; review Summary Judgment decision; prepare for and conference with potential trial witnesses." (Joint Statement under LR 54.3, Ex. A at 18.)

[5]Vardon objects to "excessive billing" on the basis of similar work by another attorney on the following occasions: for D.A. Roodman on: 6/05–6/06/02; for L.G. Kurland on: 6/05–6/06/02;

Karsten's attorneys, Robert G. Lancaster and K. Lee Marshall, in the courtroom during trial who were not sitting at counsel table; Vardon asserts that they should not be paid for their time in the courtroom.[6] As much as it would like to, Vardon does not get to determine the litigation resources that its opponents dedicate to lawsuits it brings against them; Karsten's request is limited only by the concept of reasonableness. It might be unreasonable if there were ten attorneys in the courtroom during trial, but the Court believes that the presence of five attorneys in the courtroom during this trial after three years of protracted, complicated and fractious litigation was reasonable. Vardon's objection to the excessive billing for attorneys who were present in the courtroom during trial is overruled.

## 2.    OVERBILLED OBJECTIONS

Vardon objects to many of Karsten's requested attorney's fees on the basis that the hours are "overbilled." When one of Karsten's attorneys' partial description of the time spent on a given day includes a conference with another of Karsten's attorneys, Vardon's position is that time is "overbilled" unless both attorneys list the conference in their description of work for that day. This position is untenable. The premise is an assumption that if all the attorneys involved in the conference did not bill for the time, the conference should not be billed for at all. This practice that Vardon labels "overbilling" supports an equally plausible inference of underbilling on behalf of Karsten's attorneys. The Court will not involve itself in the kind of minute micro-managing of attorney's billing practices that Vardon's position would require. Beyond the principle of reasonableness, parties need not justify their billing practices nor their use of time

---

[6]The entries are listed as "Excessive billing. Reduce each day by 5 hours to account for the time attorney sat in the Court Room when Karsten already had three attorneys at counsel's table. Reduce total time by 55 hours." (Joint Statement under LR 54.3, Ex. B at 17, 18)

and resources in litigation. Consequently, Vardon's objections based on overbilling when both attorneys did not list the same description of the use of their time are overruled.[7]

### 3.    DUPLICATIVE WORK OBJECTIONS

The final group of objections that Vardon makes to Karsten's request for attorney's fees falls under the rubric of "duplicative work." Vardon believes that where one attorney performs work that meets the same description as work earlier performed by another attorney, the work is unnecessarily duplicative. Vardon offers nothing but its bald assertion that the work was duplicative to support its position. If Karsten believed it was necessary for more than one attorney to prepare a witness for a deposition, or for that preparation to require more than one day of work, that is its prerogative. In a case such as this one, where attorney's fees are only awarded in exceptional cases, the Court does not believe that any party would be deliberately wasting resources and duplicating its efforts in order to run up the bill; the risk is too great that the party would be forced to bear its own costs. Karsten was free to prepare for depositions, conduct discovery, and ready itself for trial in whatever manner it and its client believed was appropriate. Once the case has been deemed exceptional, the request for attorney's fees is limited by the principle of reasonableness. Karsten's efforts were not unreasonable. Vardon's objections on

---

[7]Vardon registered these objections many times: for D.A. Roodman on: 8/30/99; 9/1/99; 9/3/99; 10/20/99; 10/25–10/27/99; 11/2/99; 11/3/99; 11/6/99; 11/8/99; 11/11/99; 11/12/99; 12/3/99; 12/23/99; 12/27/99; 12/29–12/30/99; 1/11–1/13/99; 1/21/00; 1/25–1/26/00; 2/8/00; 2/10–2/11/00; 3/6/00; 3/13/00; 3/20/00; 3/21/00; 3/29/00; 3/31/00; 4/3/00; 4/9/00; 4/21/00; 4/27/00; 4/28/00; 5/3/00; 5/8/00; 5/10/00; 5/30/00; 5/31/00; 6/26/00; 6/28/00; 7/13/00; 9/19/00; 9/20/00; 9/27/00; 10/17/00; 10/26/00; 12/5/00; 1/17/01; 1/22/01 (listed twice); 1/30/01; 7/5/01; 9/13/01; 5/20/02; 5/21/02; and for R.G. Lancaster on: 4/21/00; 10/1/01.

the basis of duplicative work are overruled.[8]

## 4.    OTHER REMAINING OBJECTIONS

Vardon did make a few other objections that cannot be properly characterized as falling into the three categories of objections discussed above. The Court will address each objection below.

### a. Objections to D.A. Roodman's requested fees

#### 1. 11/29/99 – 12/17/99

Vardon makes an untenable objection to D.A. Roodman's billing for "21 straight days of working for 181.1 hours" from 11/29/99 through 12/17/99. (Joint Statement under LR 54.3, Ex. B at 3–4). Vardon contends that these hours were misclaimed or misspent. After identifying some "overbilling" of time spent with an attorney not listed by the other attorney, some duplicative work, and objections to lengths of the day, Vardon requests the time spent during these three weeks be reduced "by 25 % or 45 hours." Cobbling together the three problematic objections described above does not eliminate the problems with any of them. Moreover, the recommended reduction appears to be entirely arbitrary. This objection is utterly without foundation and it will be overruled.

#### 2. 5/16/02

Vardon objects to Roodman's billing of 11.0 hours on 5/16/02 because there is "no meaningful information as to what was done." Roodman's submitted description for 5/16/02

---

[8]Vardon makes objections to duplicative work for: D.A. Roodman on 8/19–8/20/99; 11/5/99; 11/18–11/19/99; 11/22–11/23/99; 11/29/99; 12/20–12/21/99; 4/12/00; 4/11–4/12/00;5/12/00; 5/15–5/17/00; 5/2/02; for R.G. Lancaster on: 11/9–11/10/99; 11/23/99; 4/12/00.

was "pretrial preparation and strategy." Although there were doubtless things to be done two months before trial to prepare, attorneys are required to submit reasonably specific information to support the award of attorney's fees. This description is too vague to support the granting of reasonable attorney's fees. Vardon's objection to those 11.0 hours will be sustained and the Court will reduce Roodman's time by 11.0 hours.

### 3. 7/31/02

On July 31, 2002, the only trial activity was the jury instructions. Vardon objects to Roodman's submission of 8.0 hours of work on July 31 described as "Jury instructions; post-trial." Vardon represents that the Court did not take 8 hours to read the jury instructions and requests a four hour reduction in time. The Court recalls that it did not take 8 hours to read the jury instructions, and that 4 hours is a closer proximation. Roodman's description of his work also indicates "post-trial." Like the description of 5/16/02, this is too vague to support the award of reasonable attorney's fees. While there are certainly things that an attorney can be doing post-trial that would support an award of attorney's fees, the description "post-trial" will not support the Court's award of fees. The Court will further reduce Roodmans' time by 4.0 hours.

### 4. 8/1/02

On August 1, 2002, the only trial event was the entry of the verdict. Vardon objects to Roodman's submission of 8.0 hours of work on August 1 described as "Trial." Vardon requests a four hour reduction in time. It did not take eight hours to enter the verdict in this case. While Mr. Roodman surely had to be available for the entry of the verdict, he was not prevented from working on other tasks while he was waiting for the jury to return. Vardon's objection to these 8 hours will be sustained. The Court will further reduce Roodmans' time by 4.0 hours.

### b. Objections to L.G. Kurland's fees on 7/31/02

L.G. Kurland submitted that he spent 11.60 hours on July 31, 2002 on the following tasks: "Review jury instructions; prepare for and attend trial day 11." As discussed above, the only trial activity on July 31, 2002 was the jury instructions, which took approximately 4 hours. Vardon objects to 11.6 hours and requests a reduction of 7.6 hours. Unlike Roodman's description, Kurland's does provide support for additional work beyond the attendance at trial. He indicates that he reviewed the jury instructions and prepared for the trial day. After reaching agreement on the jury instructions the previous afternoon, however, the Court finds that it is not reasonable to spend an additional 7.6 hours reviewing them and preparing to appear in court for them to be read. It is reasonable to spend some time in pursuit of these tasks, but Kurland's request is excessive.[9] If Kurland pursued other tasks during this time, they are not described in Karsten's submission to this Court. In order to determine a reasonable number of hours, the Court looks to the entries of Kurland's co-counsel for July 31, 2002. R.G. Lancaster submitted that he worked for 6.70 hours "prepar[ing] exhibits for presentation to jury; prepar[ing] for and attend[ing] court's reading of instructions to jury." K.L. Marshall submitted that he worked for 6.0 hours "prepar[ing] for and attend[ing] trial." Using these two entries as a guidepost, the Court finds that it would have been reasonable for Kurland to spend 6.5 hours on the tasks described. Consequently, the Court will reduce Kurland's time by 5.1 hours.

### c. Objections to R. Wizorek's fees on 12/15/99

R. Wizorek submitted that he worked for 10.0 hours on December 15, 1999, preparing for

---

[9]The description of these tasks is sufficiently specific for the Court to appreciate the work that Kurland was doing. While it would have been appropriate to pursue post-trial work, Roodman's description was too vague to support an award of fees.

and taking J. Wulkotte's deposition. Vardon objects to this as overbilling because " the deposition was about 1 hour and the deposition preparation was conducted the day before" and requests a nine hour reduction. While the Court credits Vardon's submission that the deposition only took one hour, that is insufficient to support the requested reduction Vardon seeks. First, the suggestion that deposition preparation on the day of the deposition was unnecessary because of previous deposition preparation must be rejected for the same reason as Vardon's duplicative billing objections. Karsten can prepare for depositions in whatever manner it and its client deems appropriate, and it can be awarded attorney's fees for that preparation provided it is reasonable. Preparing for a deposition on the day of the deposition is eminently reasonable. Second, if the deposition took place during the latter part of a regular work day (between 8:00 a.m. and 5:00 p.m.), it is certainly possible for Mr. Wizorek to have worked for 9 hours prior to the beginning of the deposition. Just as Karsten has to make sufficiently specific entries in support of its request for fees, Vardon must make sufficiently specific objections to support requested reductions. If the deposition took place first thing in the morning, than Vardon's objection could stand. But if that is the case, Vardon is charged with bringing that to the attention of this Court. The Court will not reduce fees based on speculation. Vardon's objection to Wizorek's fees on December 15, 1999 is overruled.

### d. Expert Witness Fees

Karsten seeks to recover "expert witness expenses" in the amount of $259,890.25. Vardon correctly argues that fees for expert witnesses are not recoverable under 35 U.S.C. § 285. In 1991, the Supreme Court discussed whether expert witness fees are recoverable where the statute only provides for recovery of "reasonable attorney's fees." West Virginia Hosp. Inc. v.

Casey, 499 U.S. 83 (1991). In that case, the Court held that expert witness fees are only recoverable within the limits that 28 U.S.C. § 1821(b) establishes for the compensation payable to witnesses generally, unless there is explicit statutory authority to the contrary. Id. at 95. The Federal Circuit has made it quite clear that 35 U.S.C. § 285 does not provide statutory authority to award expert witness fees above the limits of 28 U.S.C. § 1821(b). See Amsted Indus. Inc. v. Buckeye Steel Castings, Co., 23 F.3d 374, 376 (Fed. Cir. 1994) ("35 U.S.C. § 285 [does not] provide[] the explicit [statutory] authority . . . require[d] for an award of expert witness fees above the limit in 28 U.S.C. § 1821(b)."). Consequently, requests for expert witness fees fall under 28 U.S.C. § 1920. Recovery of expert witness fees under Section 1920 of Title 28 is limited to $40 dollars per day of testimony and accompanying transportation costs to and from the courthouse. 28 U.S.C. § 1821(b); see also Amsted Indus., 23 F.3d at 376. Karsten seeks to recover expert transportation costs in its Bill of Costs, which will be treated separately below, but it does not seek to recover expert witness fees in its Bill of Costs.

Karsten's sole argument for the Court to grant recovery of expert witness fees is that the "Court has the inherent power to award these fees . . .in the face of egregious fraud." (Jnt. St. under LR 54.3, at 4). The Court's inherent power to award these fees can be exercised properly where a party engages in conduct that amounts to abuse of the judicial process. Vardon's inequitable conduct in support of its patent application supports the award of reasonable attorney's fees under § 285, but it is insufficient to support a finding that Vardon abused the judicial process. As a result, their request for expert witness expenses are denied.[10]

---

[10]Karsten could have sought to obtain the $40 per diem available under 28 U.S.C. § 1821(b) in its Bill of Costs, but it chose to seek full recompense for expert witness costs in its Motion to Declare Vardon's Conduct Exceptional. Consequently, the Court finds that they

13

### C.    SUMMARY OF ATTORNEY'S FEES

After making the reductions listed above, the Court finds that Karsten is entitled to recover $2,014,699.31 in attorney's fees pursuant to 35 U.S.C. § 285.

### II. KARSTEN'S BILL OF COSTS

In addition to attorney's fees, Karsten seeks to recover costs as a prevailing party pursuant to Federal Rule of Civil Procedure 54(d)(1). Rule 54 allows that "costs other than attorney's fees shall be allowed as of course . . . ." Fed. R. Civ. Pro. 54(d)(1). While Rule 54(d) establishes a presumption that the prevailing party can recover its costs, it does not give a winning litigant carte blanche to recover all enumerated costs. Six categories of recoverable costs are specified in 28 U.S.C. § 1920. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987). Recoverable costs include: (1) fees of the clerk and marshal; (2) fees for transcripts necessarily obtained for use in the case; (3) fees for printing and witnesses; (4) fees for copies of papers necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court appointed experts and interpreters. 28 U.S.C. § 1920.

Karsten filed its Bill of Costs on September 24, 2002. Vardon asserts that Karsten has waived its request for costs under Local Rule 54.1. Failing that, Vardon offers several additional objections to Karsten's request for fees. Each will be addressed below.

### A.    WAIVER OF COST RECOVERY UNDER LOCAL RULE 54.1(a)

Local Rule 54.1(a) provides that a party can file a bill of costs within 30 days of the entry of judgment that would allow costs; if a bill of costs is not so filed, it "shall be deemed waived." LR 54.1(a). In support of its waiver argument, Vardon quotes the text of Local Rule 54.1(a),

---

waived the opportunity to request the $40 per diem in the Bill of Costs.

14

adding bold typeface to the portion of the rule that indicates a failure to file within 30 days results in a waiver of taxing costs. The very next sentence of the Local Rule explicitly allows that "the Court may . . . extend the time for filing the bill." LR 54.1(a). In this litigation, Karsten filed a motion for attorney's fees and costs on August 15, 2002, eight days after the entry of judgment onto the docket of the case. In setting a schedule for the motion, the Court ordered that the bill of costs had to be filed by September 24, 2002. Karsten filed the bill of costs on September 24, 2002, within the time allowed by the Court's order.

The Court does not know whether Vardon chose not to read the last sentence of Local Rule 54.1 which permits the Court to extend the time for filing a bill of costs or whether Vardon simply chose to ignore the Court's order in its waiver request. The Court views either alternative quite dimly. Karsten did not waive its request for costs and Vardon certainly should have known it. Vardon's waiver argument is rejected out of hand.

### B.    VARDON'S SPECIFIC OBJECTIONS

Vardon raises several specific objections to items in Karsten's Bill of Costs. Vardon objects to recovery of: (1) fees for service of process; (2) costs related to videotaping depositions; (3) expert witnesses' travel costs; (4) daily and/or expedited copies of transcripts; (5) non-party witness travel costs; (6) several document photocopying requests; and (7) the preparation of demonstrative exhibits.

### 1.    COSTS FOR PRIVATE PROCESS SERVERS

Vardon objects to taxation of Karsten's costs for service of process because they used private process servers. Although private process servers are not specifically allowed for under 28 U.S.C. § 1920, the Seventh Circuit has held that private process servers are taxable as costs

15

under 28 U.S.C. § 1920(1) provided that their rates do not exceed what it would cost to have the U.S. Marshals effectuate service of process. See Collins v. Gorman, 96 F.3d 1057, 1060 (7th Cir. 1996) ("[T]he prevailing party [can] recover service costs that do not exceed the marshal's fees, no matter who actually effected service."). When the U.S. Marshals serve process personally, it costs $45 per hour for each item served plus travel costs and any other out-of-pocket expenses. See 28 C.F.R. § 0.114(a)(3) (setting costs for service of process).

In this case, the parties' briefs miss the pertinent issue. Vardon asserts that costs for private process servers are absolutely unrecoverable. Karsten asserts that costs for private process servers are recoverable, so they should recover the total amount. Although Karsten's foundation is correct (private process server costs are recoverable, at least in part), neither position answers the two questions that the Court needs answered to determine the proper amount of taxable costs for service of process:(1) how much time did the private process servers spend serving process and (2) how far, if at all, did they have to travel.

Karsten's Bill of Costs, at Exhibit B, provides a breakdown of the costs of service per witness: Richard Simms costed $74.00; Steve Dunn was served twice at a cost of $94.95 each time; Frank Sowa was served at a cost of $95.00; and George Geil and Robert Burke were served at a cost of $136.00. The invoices in Exhibit C provide no information, though, as to how long it took to effectuate service or how far the process servers had to travel. Although the Court believes that all of these costs are within the range of what the U.S. Marshals might charge, the Court will not award potentially unjustified costs based upon speculation. Consequently, the Court will limit recovery to the absolute minimum charge of the U.S. Marshals for personal service, which would be $45 per incident of service. Using the minimum Marshals charge for six

16

incidents of service, Karsten's service costs should be reduced from $494.40 to $270.00. The Court is not blind to the realities of the fee-for-service rates that many private process servers charge, but the realities of that market cannot circumvent the permissible recovery limits established by federal law, federal regulation, and the Seventh Circuit. Parties should be aware of those limits, for the Court is bound to respect them.

## 2.    COSTS FOR VIDEOTAPING DEPOSITIONS

Section 1920(2) authorizes the taxing of costs for "fees for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2). A party can properly tax costs for both a videotaped deposition and transcripts of the same deposition provided that both are reasonably necessary. See Rogers v. City of Chicago, 2002 WL 423723, at *3 (N.D. Ill. Mar. 15, 2002) ("the costs of both a stenographic transcript and videotape of a deposition may be taxed against a party"). Karsten submits that both parties made use of portions of videotaped depositions during trial. In these circumstances, the costs of both the videotape and the transcript were necessary to the case. Karsten can recover costs for both the videotape and the transcript.

## 3.    TRAVEL COSTS FOR EXPERT WITNESSES

Vardon objects to Karsten's taxing of travel costs for expert witnesses. Witness travel costs, whether they are expert or otherwise, are taxable under 28 U.S.C. § 1920 within the limits established in 28 U.S.C. § 1821. See 28 U.S.C. § 1821(c)(4) ("All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title."). The two expert witnesses that Karsten seeks to tax costs for are Dalbert Shefte and Mark Gleason. For Dalbert Shefte, Karsten seeks to recover $2,578.95 for "airfare and expenses." For

17

a witness who came to Chicago from North Carolina for trial, these travel costs are unusually high. Beyond the affidavit required by 28 U.S.C. § 1924, the only supporting documentation for these costs is an invoice from Mr. Shefte's law firm listing "travel expenses" at $2,578.95. This is too vague to support the requested costs. The Court will reduce these costs by $2000 to $578.95; this amount roughly approximates the costs of Karsten's other expert's airfare. For Mark Gleason, Karsten seeks to recover $563.00 for airfare. Although Karsten did not include supporting documentation for these costs beyond the affidavit either, the Court finds that the affidavit is sufficient to support the taxation of $563.00 in airfare. In the future, however, Karsten would be better served to submit a "receipt or other evidence of actual cost." 28 U.S.C. § 1821(c)(1).

### 4. EXPEDITED DAILY TRIAL TRANSCRIPTS

Vardon submits that daily trial transcripts were not necessary to the litigation and, therefore, are not taxable under Section 1920(2). While daily trial transcripts are not necessary in every case, in this case, they were essential. On several occasions, two of which are documented in Karsten's response, (Karsten's Rep. Support Application Costs, at 4), the parties relied on the trial transcripts to help settle disputes about the testimony. In this case, the daily trial transcripts were necessary to the litigation and are, therefore, properly taxed as costs.

### 5. TRAVEL COSTS FOR NON-PARTY WITNESSES

Vardon objects to the taxation of costs for the travel of three non-party witnesses: Steve Dunn, Charles Swisshelm, and John Tate. Vardon makes the specious claim that Karsten is only entitled to tax as costs the $40 per diem set forth as an attendance fee in Section 1821(b). 28 U.S.C. § 1821(b). As with the local rules, if Vardon would have continued to read the statute

18

beyond the portion it seeks to apply, it would find Section 1821(c), which allows for the recovery of expenses for witness' travel. Although the taxable travel costs for Steve Dunn are quite high ($5589.00), Mr. Dunn traveled from Johannesburg, South Africa to Chicago for trial and Karsten has provided sufficient supporting documentation for the taxation of costs. Furthermore, his testimony was necessary to a determination of the issues in this case. Karsten can properly tax these costs for witness travel, and Vardon's objection is overruled.

### 6. COSTS FOR PHOTOCOPYING DOCUMENTS

Vardon objects to nearly all of Karsten's costs for photocopying documents. It objects to photocopies of discovery material, photocopies of trial exhibits, photocopies of patent materials, and the per page rate (20 cents) Karsten assesses for photocopies. Fees for "copies of papers necessarily obtained for use in the case" are properly recoverable under Section 1920(4). 28 U.S.C. § 1920(4). Vardon asserts that Karsten "makes no attempt to explain what these [discovery materials and pleadings] are, how they were used, or why they were 'necessarily obtained for use in the case.'" (Vardon's Resp. to Karsten's Mem. Support Application Costs, at 7.) The Court is beginning to wonder whether Vardon has a different copy of Karsten's Bill of Costs. If Vardon does have the same document Karsten submitted, it can refer to Exhibit B of the Bill of Costs which provides separate line entries for "Discovery Materials," "Karsten's Trial Exhibits," "Vardon's Trial Exhibits," "Trial Exhibits (Jury Copy)," Karsten Pleadings," and "Vardon Pleadings." The specifications in Exhibit B along with the invoice for some of the copies in Exhibit C identifies the documents and their costs with sufficient specificity.

### a. Photocopies of Discovery Documents

Karsten (thankfully) does not identify the contents of all 12,536 pages of discovery

material Vardon provided, nor need it. Karsten submits that it provided Vardon with approximately 17, 966 pages of documents during discovery. The number of pages of discovery material it photocopied from Vardon is in the same neighborhood. Costs associated with photocopying documents that Vardon made available for Karsten's inspection are necessary and recoverable.[11] Vardon's objection to the discovery photocopies is overruled.

### b. Photocopies of Trial Exhibits

Vardon also objects to Karsten's photocopying of multiple copies of trial exhibits. Here, Vardon is half right. Karsten's photocopying of more than two copies of Vardon's trial exhibits is a matter of convenience to Karsten's attorneys and is therefore not properly taxed as costs. See Haroco, Inc. v. American Nat. Bank & Trust Co. of Chicago, 38 F.3d 1429, 1441 (7th Cir. 1994) ("only two sets of copies would be reasonable"). Karsten's invoice for those copies for $1,559.74 reads "copies of plaintiff's exhibits x 3." The Court will reduce those costs by one-third, from $1,559.74 to $1,029.83.

Karsten's photocopying of multiple copies of its own trial exhibits, however, is clearly necessary to the litigation. Looking again at Exhibit B of the Bill of Costs, it spells out exactly why four copies are necessary: "original, Court's copy, Vardon's copy, Jury copy." For any attorney with trial experience in federal court, the need for four copies of exhibits should be self-apparent. Vardon's objection to those copies is rejected.

### c. Photocopies of Patent Documents

---

[11]Karsten also submits that Vardon made the documents available for Karsten's attorneys to inspect "on a floor in an office absent of furniture." (Karsten Rep. Support Application Costs, at 5). Inspection is a permissible form of document discovery under Rule 34, but Karsten's submission raises an inference of underhanded discovery tactics. If such practices occurred (which the Court does not determine one way or the other), the Court would strongly disapprove.

Vardon also objects to Karsten's copy costs relates to patent documents Karsten obtained. Costs associated with obtaining photocopies and certified copies of U.S. patents were necessary for use in this case that Vardon initiated against Karsten. These costs are properly taxed against Vardon.

### d. Per page costs of Photocopies

Vardon contends that Karsten's rate of 20 cents per photocopied page is excessive, citing to Bogdan v. Eggers, 2001 WL 619512, at *2 (N.D. Ill. May 25, 2001). Bogdan itself recognizes that there are conflicting opinions on whether 15 or 20 cents per page is a reasonable amount for photocopies. See Bogdan v. Eggers, 2001 WL 619512, at *2 ("the case law on this issue is conflicting"). This Court finds that 20 cents per page is a reasonable amount to charge for photocopies.

### 7.    COSTS FOR DEMONSTRATIVE EXHIBITS

This patent case centered around extremely small components and design elements of golf clubs. Karsten prepared enlarged golf club models as demonstrative exhibits to aid the jury's understanding of the central issues in this litigation. Vardon did not object to the use of the demonstrative exhibits during trial. The Court is confident that the demonstrative exhibits made the issues more clear to the jury, as they certainly were of assistance to the Court. For this case, Karsten's costs in preparing the demonstrative exhibit were necessary to the litigation, and therefore the costs are properly taxed as exemplification costs under 28 U.S.C. § 1920(4). See Cefalu v. Village of Elk Grove, 211 F.3d 416, 428 (7th Cir. 1999).

### C.    SUMMARY OF BILL OF COSTS

The Court finds that Karsten is entitled to recover $100,900.86 in costs from Defendant

21

Vardon.  This amount reflects the reductions the Court described above.

## CONCLUSION

For the reasons set forth above, the Court grants Karsten's Motion to Declare Plaintiff's Conduct Exceptional and grants, in large part, Karsten's Bill of Costs. Karsten's Bill of Costs is granted in the amount of $100,900.86. Karsten's motion for attorney's fees is granted in the amount of $2,014,699.31. Plaintiff Vardon is ordered to pay Defendant Karsten $100,900.86 in costs and $2,014,699.31 in attorney's fees.

Enter:

David H. Coar
United States District Judge

Dated: March 31, 2003

23