# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2785 | **DATE** | 3/28/2003 |
| **CASE TITLE** | Vardon Golf Company, Inc. vs. Karsten Manufacturing Corp. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant, Karsten Manufacturing Corporation's motion to compel [278-1] is granted in part and denied in part. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 31 2003 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 3/28/2003 date mailed notice | |
| | DK courtroom deputy's initials | | DK mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
03 MAR 28 PM 3: 36

Date/time received in central Clerk's Office

Document Number

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **VARDON GOLF COMPANY, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 99 C 2785** |
| | ) | |
| **KARSTEN MANUFACTURING** | ) | |
| **CORPORATION,** | ) | **Magistrate Judge Morton Denlow** |
| | ) | |
| **Defendant.** | ) | |

DOCKETED

MAR 3 1 2003

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

In April 1999, Vardon Golf Company, Inc. ("Vardon" or "Plaintiff") initiated this patent infringement action involving a golf club head against Karsten Manufacturing Corporation ("Karsten" or "Defendant"). Following a jury trial before Judge David H. Coar, the jury rendered a verdict in favor of Karsten. In addition, the jury found that Vardon's sole shareholder, Dillis V. Allen ("Allen"), engaged in inequitable conduct before the United States Patent Office by withholding prior art. Karsten then moved Judge Coar for a finding of inequitable conduct and to declare this case "exceptional" under 35 U.S.C. § 285 in order to recover its attorney's fees. Karsten requested leave to propound discovery on these issues against Vardon, Allen, and Vardon's counsel, Niro, Scavone, Haller & Niro, Ltd. ("Niro, Scavone"). Judge Coar granted the request.

Karsten initiated discovery regarding the issue of inequitable conduct by means of a document request served upon Vardon and Allen and a subpoena served upon Niro, Scavone. This case is before the Court on Karsten's motion to compel production of documents being withheld. The issues to be decided are: 1) whether Vardon waived the attorney-client privilege and work product doctrine protection when it discussed and quoted from certain attorney-client communications in a brief to the Seventh Circuit; and 2) whether the crime-fraud exception doctrine requires the documents be produced. For the reasons mentioned herein, Karsten's motion is granted in part and denied in part.

## II. BACKGROUND FACTS

### A. The Litigation

On February 16, 1999, Vardon entered into a Contingent Fee Agreement with Niro, Scavone. Def. Ex. E[1] at 3. Under the agreement, Niro, Scavone would negotiate licences and initiate litigation, if necessary, regarding golf club patents assigned to Vardon by Allen, the inventor and Vardon's sole shareholder. *Id.* Niro, Scavone was to be paid on a contingent fee basis. *Id.* Vardon initiated several lawsuits in order to protect its patent. *Id.* at 4. The present case was filed on April 27, 1999.

A jury trial was held in August of 2002, in which the jury found in favor of Karsten. In addition, the jury found that Allen had engaged in inequitable conduct before the Patent Office. Under patent law, a court may grant attorney's fees to the prevailing party in

---

[1]Defendant's exhibits are attached to Karsten's Motion To Compel.

exceptional cases. 35 U.S.C. § 285. After the judgment was entered, Karsten filed a motion requesting Judge Coar to find that Allen's conduct before the Patent Office constituted an exceptional circumstance, thereby entitling Karsten to collect its fees from Vardon.

## B.    Niro, Scavone Seeks to Withdraw as Counsel

In the meantime, the relationship between Vardon and Niro, Scavone broke down. Niro, Scavone filed a motion to withdraw as counsel. On November 7, 2002, Judge Coar granted the motion to withdraw. Niro, Scavone also filed motions to withdraw in other pending Vardon patent cases in the Northern District of Illinois. Two of the other pending cases also involve the same defendant, Karsten. One is pending before Judge James B. Zagel ("99 C 6934"), and the other is pending before Chief Judge Charles P. Kocoras ("00 C 7721"). Upon receiving the motion to withdraw in case 99 C 6934, Judge Zagel asked Allen and Niro, Scavone to exchange letters to each other; Niro, Scavone was to explain the reasons for seeking withdrawal, and Allen was to explain the reasons he objected to the withdrawal. Niro, Scavone's letter is dated November 18, 2002 ("November 18th letter"), and Vardon's letter is dated November 19, 2002 ("November 19th letter"). A conference was later held with Judge Zagel in chambers at which time he was given copies of the two letters for his review. As of this time, Judge Zagel has not ruled upon the motion. Judge Kocoras granted the motion to withdraw in Case 00 C 7721 on November 21, 2002.

## C.   Mandamus Petition To Seventh Circuit

Vardon filed three substantially identical petitions for writ of mandamus ("the petition") with the Seventh Circuit asking the Seventh Circuit to direct Judges Coar, Zagel and Kocoras to deny Niro, Scavone's motions to withdraw. The disclosures within the petition give rise to the issue now before this Court. In the petition, Vardon offered to provide the November 18th and 19th letters to the court, "if the court pleases, under seal, to maintain attorney-client privilege." Def. Ex. E at 9. However, later in the petition, Vardon refers to the confidential communications and directly quotes from Niro, Scavone's letter. Def. Ex. E at 15, 20. For instance, Vardon states, "Niro, Scavone, told Judge Zagel that Dillis Allen has a pattern of not being candid with the Patent Office regarding prior art." Def. Ex. E at 15. In addition, the petition states that "Niro, Scavone accused its own client of failing to call to the attention of the Patent Office certain prior patents alleged to be relevant to the patents in the case before Judge Zagel. . . ." *Id.*

The petition also includes direct quotes from the November 18th letter. *Id.* at 20. It states, "Mr. Vogt also stated, 'Your sole motivation seems to be that you and Mr. Mazza agreed to leave Niro, Scavone as the last man standing to foot your bill now in excess of $62,000 in unreimbursed expenses [Niro, Scavone] advanced on Vardon's behalf.'" *Id.* Further, the petition states, "Niro, Scavone also states 'in the matter pending before Judge Kocoras, Vardon is attempting to force us to continue to enforce patent rights which we have concluded may well be invalid in light of the prior art cited by Karsten.'" *Id.*

4

Karsten contends that the disclosures made in the petition written by Allen cover the subject matter of information ordinarily protected by the attorney-client privilege. Specifically, the disclosed material covers communications in the November 18th and 19th letters exchanged between Niro, Scavone and Vardon. Karsten argues that the disclosure of the information in Vardon's petition waives the attorney-client privilege and work product protection covering these communications; thus, any communications regarding the same subject matter should be produced.

## D.    Motion To Compel

Judge Coar granted Karsten leave to propound discovery. Karsten propounded eleven document requests on Vardon. Def. Ex. A. Vardon and Niro, Scavone refused to produce any documents citing the attorney-client privilege and work product doctrines. Karsten responded with a motion to compel which has been referred to this Court. Vardon's response to the motion includes a privilege log describing each document responsive to Karsten's discovery requests. Niro, Scavone and Vardon submitted copies of each document for *in camera* review. Thirty-four documents were submitted and reviewed by the Court.

## III. DISCUSSION

## A.    Attorney-Client Privilege

Karsten argues that Vardon has waived its attorney-client privilege by revealing privileged communications in its brief to the Seventh Circuit. This Court agrees. The only significant issue is the scope of the waiver.

## 1. Existence of the Privilege

To determine whether a document is protected by the attorney-client privilege, the Seventh Circuit has adopted the elements suggested by Dean Wigmore. *McCook Metals, L.L.C. v. Alcoa, Inc.,* 192 F.R.D. 242, 251 (N.D. Ill. 2000) (citing *United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991)). The elements are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived. *Id.*

The purpose of the attorney-client privilege is "to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)). The party claiming the privilege has the burden of proving all of its essential elements. *Wilstein v. San Tropai Condominium Master Assoc.,* 189 F.R.D. 371, 378 (N.D. Ill. 1999). In addition to protecting communications from the client to the attorney, communications from the attorney to the client are privileged if they constitute legal advice or would reveal the substance of a client confidence–directly or indirectly. *United States v. Defazio,* 899 F.2d 626, 635 (7th Cir. 1990).

After an *in camera* review of the documents provided by both Vardon and Niro, Scavone, this Court finds that the following constitute attorney-client privileged communications.[2] (1) August 12th facsimile from Allen to Niro, Scavone, (2) August 14th letter from Niro, Scavone to Allen, (4) August 23rd letter from Niro, Scavone to Vardon, (5) August 26th letter from Vardon to Niro, Scavone, (6) August 28th letter from Niro, Scavone to Vardon, (7) August 28th letter from Niro, Scavone to Vardon, (8) August 27th facsimile from Allen to Niro, Scavone, (11) September 6th letter from Niro, Scavone to Vardon, (12) September 10th letter from Vardon to Niro, Scavone, (13) September 17th letter from Niro, Scavone to McCarthy, Duffy, (14) October 3rd letter from Niro, Scavone to Vardon, (15) October 11th letter from Mike Mazza to Niro, Scavone, (16) October 14th letter from Niro, Scavone to Vardon, (18) October 15th letter from McCarthy, Duffy to Niro, Scavone, (19) October 17th letter from Niro, Scavone to Vardon, (20) October 17th letter from Vardon to Niro, Scavone, (28) November 18th letter from Niro, Scavone to Vardon, (29) November 19th letter from Vardon to Niro, Scavone, (30) November 20th letter from Niro, Scavone to Vardon, and from Niro, Scavone's privilege log, the August 15th letter from Niro, Scavone to Allen.

---

[2] Both Niro, Scavone and Vardon filed documents under seal and privilege logs. Niro, Scavone's privilege log contains two documents not included by Vardon. References are to Vardon's privilege log unless otherwise noted. Vardon's log is not numbered; references are made as if the list had been numbered and by the date and description of the item.

## 2. Waiver of the Attorney-Client Privilege.

The attorney-client privilege is based on a principle of confidentiality in order to enable attorneys to properly advise their clients. *Eagle Compressors, Inc., v. HEC Liquidating Corp.*, 206 F.R.D. 474, 477 (N.D. Ill. 2002). The purpose of the privilege is "to encourage clients to make full disclosure to their attorneys." *Upjohn*, 449 U.S. at 389. The attorney-client privilege reinforces the concept of trust necessary between a lawyer and client.

The privilege is subject to waiver. *Eagle Compressors*, 206 F.R.D. at 477 (client waived privilege by disclosing letter from his attorney to opponent in course of a settlement meeting). Because the privilege has the effect of withholding relevant information, it is applied only when necessary to achieve its purpose. *Wilstein*, 189 F.R.D. at 378; *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) (noting that although violation of the privilege is a serious matter, the privilege is "in derogation of the search for truth . . . and this circuit has repeatedly held that it must be strictly confined[]"). Furthermore, "[a]ny voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Powers v. Chicago Transit Authority*, 890 F.2d 1355, 1359 (7th Cir.1989) (citing *U.S. v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987)). Thus, the privilege can be waived when a party shares the confidential information with third parties. *Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 255 (N.D. Ill. 1999). In addition, the general rule is that voluntary disclosure of privileged communications waives the privilege as to all other communications dealing with the same subject matter.

8

*Blanchard v. EdgeMARK Financial Corp.*, 192 F.R.D. 233, 236 (N.D. Ill. 2000); *Fujisawa*
*Pharmaceutical Co., Ltd. v. Kapoor*, 162 F.R.D. 539, 541 (N.D. Ill. 1995) ("Voluntary
disclosure of privileged information about a matter waives the privilege as to all information
on the same subject matter."). This principle is referred to as subject matter waiver.

The subject matter waiver doctrine embodies two principles: (1) only confidential
matters should be protected by the attorney-client privilege, and (2) a party should not be
permitted to "exploit selective disclosures for tactical advantage." *In re Consolidated Litig.*
*Concerning Int'l Harvester's Disposition of Wisconsin Steel*, 666 F. Supp. 1148, 1153 (N.D.
Ill. 1987).

> [A] party cannot selectively divulge privileged information without impairing
> its attorney-client privilege as to the rest of that information concerning the
> same subject . . . . In some instances, a tactical advantage of a limited
> disclosure may be readily apparent, and equity stridently counsels a finding that
> the privilege has been waived.

*Id.* (quoting *B & J Mfg. Co. v. FMC Corp.*, 21 Fed. R. Serv. 2d (Callaghan) 1119, 1119-20
(N.D. Ill. 1975)).

Karsten argues that Vardon waived its attorney-client privilege protection when it
revealed the substance of those communications in its petition. Karsten further argues that
Vardon waived its privilege to all other documents covering the same subject matter. This
Court agrees that Vardon's voluntary disclosure of portions of the privileged communications
in the petition to the Seventh Circuit constituted a waiver of the attorney-client privilege.

Karsten first asserts that Vardon attached privileged documents to its public filing, the petition. This court was provided with a copy of the petition, but not with copies of attachments filed along with it. To the extent that Vardon attached privileged documents to his petition without placing them under seal for *in camera* inspection, this Court agrees that it has waived the privilege. *See Lam v. DeTella*, No. 98 C 283, 1999 WL 169055, at *1 (N.D. Ill. March 19, 1999) (stating, "[b]ecause Lam has waived any privilege considerations by making [his attorney's] letter part of his public filing, this Court has attached a photocopy of that letter to the memorandum order[]").

Second, Karsten argues that Vardon's reference to and quotation of the privileged communications waived the privilege. Vardon's disclosure of privileged communications by quoting from and referring to the documents in the petition was a voluntary, as opposed to an inadvertent, disclosure. Allen is an attorney and cannot claim that his use of the communications in the petition was a mistake. Furthermore, although he did not disclose the entire communication, he selectively chose to reveal specific statements to the court and the public. Quoting from privileged documents was inconsistent with the confidential nature of the attorney-client relationship. Having selectively disclosed some of the communications, Allen waived Vardon's attorney-client privilege protecting those communications.

The next issue is the scope of the waiver. Karsten argues that any confidential communication on the same subject matter of the disclosed communication should be produced in its entirety. While some courts may interpret subject matter waiver broadly, the

10

scope of waiver in patent cases is generally construed narrowly. *Graco Children's Products, Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, No. 95 C 1303, 1995 WL 360590, at *8 (N.D. Ill. June 14, 1995). Furthermore, a court should make its determination on a case by case basis considering the principles of fundamental fairness. *Id.* Although a court need not consider whether the party has derived a tactical advantage from the disclosure, it may be an important consideration. *Id.*

Courts in this circuit have held that production of some privileged documents waives the privilege as to all documents of the same subject matter. *Chinnici D.C. v. Cent. DuPage Hosp.*, 136 F.R.D. 464, 465 (N.D. Ill. 1991); *Burden-Meeks v. Welch*, No. 02 C 2460, 2003 WL 262480, at *4 (7th Cir. Feb. 10, 2003). In both *Chinnici* and *Burden-Meeks*, the person waiving the privilege had done so by disclosing an entire document. *Chinnici*, 136 F.R.D. at 465; *Burden-Meeks*, 2003 WL 262480, at *4. In contrast, Vardon did not disclose an entire document, but only discreet portions. This Court finds that Vardon's disclosures and direct quotations from Niro, Scavone's November 18, 2002 letter in its petition amount to a subject matter waiver of the attorney-client privilege.

After *in camera* review, this Court finds the following to constitute the subject matter for which the attorney-client privilege has been waived and for which Vardon and Niro, Scavone must produce portions of attorney-client communications which address these issues: 1) Niro, Scavone's or Vardon's identification of prior art references that Vardon or Allen knowingly and intentionally failed to bring to the attention of the U. S. Patent Office; 2) Niro,

Scavone's accusations that Vardon or Allen failed to call prior patents to the attention of the U. S. Patent Office; 3) Vardon's attempts to force Niro, Scavone to continue to enforce patent rights which Niro, Scavone has concluded may be invalid in light of the prior art cited by Karsten and 4) that Niro, Scavone had full and complete knowledge of Vardon's acts, conduct, and prior art since "late 1999" with regards to the patent applications before the U. S. Patent Office. This finding applies to all documents provided to the Court for *in camera* review. Vardon and Niro, Scavone are required to produce those portions of the documents which relate to the foregoing subjects.

This Court additionally finds that those portions of the attorney-client communications regarding Vardon's fee dispute with Niro, Scavone are not relevant to Karsten's motion for inequitable conduct and need not be produced.

## B.    Work Product Doctrine

Karsten's second argument is that Vardon waived the work product protection over these communications when it disclosed their contents in its petition. The attorney work product doctrine, first laid out in *Hickman v. Taylor*, 329 U.S. 495 (1947), protects otherwise discoverable documents and tangibles, and was subsequently codified as Rule 26(b)(3) of the Federal Rules of Civil Procedure. Rule 26(b)(3) provides:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable

> without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

FED. R. CIV. P. 26(b)(3). This Court recently discussed the policies and principles which support the work product doctrine and incorporates that discussion by reference. *Eagle Compressors*, 206 F.R.D. at 478-79. Although documents and tangibles created by the representative in anticipation on litigation are protected, the underlying facts may be subject to disclosure in ordinary discovery if they are non-privileged. See *Hickman v. Taylor*, 329 U.S. 495, 513 (1947). For instance, in the course of ordinary discovery, Vardon and Niro, Scavone must disclose whether Allen had knowledge of certain prior art in response to an interrogatory. Niro, Scavone, is not required, however, to disclose its notes and memos regarding these facts. See *id.* at 512-13.

After *in camera* review of all documents, this Court finds that the following documents are protected by the work product doctrine: (2) August 14th letter from Niro, Scavone to Vardon, (18) October 15th letter from McCarthy, Duffy to Vardon, (19) October 17th letter from Niro, Scavone to Vardon, and (28) November 18th letter from Niro, Scavone to Vardon. At the time these materials were prepared by Niro, Scavone and another attorney briefly representing Vardon; Vardon was in the throes of litigation. It had just lost the jury trial, it was contemplating an appeal, and was engaged in a dispute with its attorney over the firm's continued representation of Vardon.

That these items fall under the protection of the work product doctrine does not end the inquiry, for just as a party may waive its attorney-client privilege protection, it may also waive work product protection. A waiver occurs when the protected communications are disclosed "in a manner which 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Blanchard*, 192 F.R.D. at 237 (quoting *Behia v. Shapiro*, 176 F.R.D. 277, 279 (N.D. Ill 1997)). The focus is not whether the disclosure is voluntary, but whether the information is disclosed to an adversary. *In re Bank One Securities Litigation*, 209 F.R.D. 418, 424 (N.D. Ill. 2002).

Here, the protected material was disclosed in a public document to Karsten. Karsten accessed the confidential information by reading the publicly filed petition. Vardon's voluntary disclosure of the November 18th letter waived the work product protection over the references made in the petition. To the extent Niro, Scavone's work product has not been shared with its client, it has not been waived. To the extent it was shared with its client and disclosed by Vardon in its petition for writ of mandamus to the Seventh Circuit, it has been waived—only to the extent disclosed. For purposes of this analysis, the extent of the waiver applies to those documents which Niro, Scavone disclosed to its client and which protection was waived by disclosure as discussed in Section III.A.2. above.

## C.    Crime-Fraud Exception.

Karsten argues that even if Vardon did not waive its attorney-client privilege protection and work product doctrine protection by publicly disclosing the communication, the privileges are waived under the crime-fraud exception. It argues that the crime-fraud exception applies as a result of Vardon and Allen's perpetration of a fraud on the U.S. Patent Office by failing to disclose the B-52 as prior art in his 1993 application for the '021 patent, as well as the current fraudulent pursuit of baseless litigation.

The crime-fraud exception provides that communications normally protected by the attorney-client privilege or by the work product doctrine are not protected if they relate to communications made in furtherance of a crime or fraud. *Ventre v. Datronic Rental Corp.*, No. 92 C 3289, 1995 U.S. Dist. LEXIS 1199, at *8 (N.D. Ill. Jan. 27, 1995). The purpose of this exception is to assure that "the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *Creative Indus., Inc. v. Mobil Chem. Corp.*, No. 86 C 1370, 1989 U.S. Dist. LEXIS 16631, at *4 (N.D. Ill. Oct. 23, 1989).

The crime-fraud exception applies where the party attempting to circumvent the privilege can meet the following test: (1) a *prima facie* showing of fraud, and (2) the communications in question are in furtherance of the misconduct. *Pandick, Inc. v. Rooney*, No. 85 C 6779, 1988 U.S. Dist. LEXIS 5436, at *6 (N.D. Ill. June 2, 1988). The analysis requires an exhibition of a valid relationship between the work product sought and the *prima*

15

*facie* fraud. *Id.*

### 1. *Prima Facie* Showing of Fraud

In order to meet the first prong and to establish a *prima facie* case that would destroy

the protection of attorney-client privilege and the work product doctrine, the party making the

claim is required to establish the elements of common law fraud. *Monon Corp. v. Stoughton

Trailers, Inc.,* 169 F.R.D. 99, 102 (N.D. Ill. 1996).

### a. Fraud on the Patent Office

For a fraud on the Patent Office, the party must show: (1) a knowing, willful, and

intentional act of misrepresentation or omission before the Patent Office, (2) materiality of

the misrepresentation, or omission, and (3) actual reliance by the Patent Office upon the

misrepresentation or omission. *Id.* Although the *prima facie* evidence need not be enough

to support a verdict in favor of the party making the claim, it is insufficient to merely advance

allegations of fraud or to rely solely on a jury's finding of inequitable conduct. *Id.* at 102.

Here, Karsten asserts that the jury's finding in August 2002 that Allen engaged in

inequitable conduct before the Patent Office establishes a *prima facie* showing of fraud.

Inequitable conduct, however, is distinguishable as a lesser offense than common law fraud,

and includes types of conduct less serious than "knowing and willful" fraud. *Nobelpharma

AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1069 (Fed. Cir. 1998). In *Marusiak v.

Adjustable Clamp Co.*, the defendant argued that plaintiff committed a fraud against the Patent

Office by failing to disclose construction of his prototype in the patent application. No. 01

C 6181, 2002 WL 31886834, at *1 (N.D. Ill. Dec. 27, 2002). The court recognized that a finding of fraud requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct. *Id.* at *2. Furthermore, the Court determined that unless there is clear and independent evidence of deceptive intent together with a clear showing of reliance, there can be no finding of common law fraud. *Id.* Therefore, the court held that defendant failed to make a *prima facie* showing of fraud against the Patent Office, even if the evidence was sufficient to find inequitable conduct. *Id.* at *4. Likewise, this Court cannot make a finding of *prima facie* fraud based solely on the jury's finding of inequitable conduct.

### b. Litigation Misconduct as Fraud

Karsten also alleges that Allen is currently involved in litigation misconduct and argues that this establishes a *prima facie* showing of fraud to satisfy the crime-fraud exception. Some courts have held that a knowing pursuit of baseless litigation is sufficient to show the fraud element of the crime-fraud exception test. *In Re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) (listing cases); *Motorola, Inc. v. Vosi Technologies, Inc.*, No. 01 C 4182, 2002 U.S. Dist. LEXIS 15655, at *18 (N.D. Ill. Aug. 22, 2002). The first prong is satisfied, however, only where the party seeking to circumvent the privilege can show that the very act of litigating was fraudulently being pursued despite "little or no legal or factual basis." *Richard Roe*, 168 F.3d at 71.

This Court's *in camera* inspection of the documents produced fails to present any evidence that Niro, Scavone knowingly provided assistance to Allen in furtherance of litigation with "little or no legal or factual basis."

### 2. Communication In Furtherance of the Fraud

Even if Karsten could establish the first element of the test by showing either fraud before the Patent Office or by pursuit of baseless litigation, the documents need not be produced unless Karsten can show that the communications in question were *in furtherance* of either the fraud against the Patent Office or litigation misconduct.

In making this determination, the Court must examine whether the work product sought has "some valid relationship" to the asserted *prima facie* fraud sufficient to warrant the waiver of the work product doctrine. *Pandick,* 1988 U.S. Dist. LEXIS 5436 at *6. An adequate relationship between the *prima facie* fraud and the work product sought requires a demonstration that the attorney's representation in or advice assisted the client in committing the fraud. *Id.* at *7. Furthermore, it applies only to advice provided from attorney to client in furtherance of future acts of fraud, not prior acts. *Ferguson v. Lurie,* 139 F.R.D. 362, 367 (N.D. Ill. 1991).

Here, the documents requested are communications between Niro, Scavone and its client after the jury verdict in August of 2002. Niro, Scavone's communications after the trial in late 2002 can not be in furtherance of the fraud on the Patent Office. Niro, Scavone was not representing Allen or Vardon in 1993 when Allen engaged in the misconduct before the

Patent Office. Thus, there could have been no relationship between the current communications and a fraud that occurred nine years earlier.

Moreover, the *in camera* review indicates that the communications in question expressed mental impressions and legal strategies regarding Niro, Scavone's future representation of Vardon and provided no advice or assistance in pursuit of alleged ongoing fraudulent litigation.

For the above reasons, this Court holds that Karsten did not establish the first prong of the crime-fraud exception, a *prima facie* showing of fraud. Even if it could, Karsten did not meet the second prong because it failed to show that the communications in question were in furtherance of any crime or fraud. Thus, the crime-fraud exception doctrine does not apply.

**D.    Privilege Log Documents Not Addressed Above.**

Some of the documents on Vardon's privilege log were not addressed in the above discussion. The following are not protected under the above privileges, but need not be produced by Vardon because they are not relevant to the discovery requests or the litigation: (3) August 14th letter from Niro, Scavone to Vardon, (9) September 3rd letter from Vinson & Elkins to Niro, Scavone, (10) September 6th letter from Niro, Scavone to Vinson & Elkins, (13) September 17th letter from Niro, Scavone to McCarthy, Duffy, (14) October 3rd letter from Niro, Scavone to Vardon, (17) October 14th letter from Niro, Scavone to Michael Mazza, (21) October 18th letter from Niro, Scavone to Vardon, (22) October 21st letter from Niro, Scavone to Vardon, (23) October 22nd letter from McCarthy, Duffy to Niro, Scavone,

(27) November 8th letter from Niro, Scavone to Vardon, (31) November 21st letter from Hannafan & Associates to Judge Zagel, (32) December 18th letter from Niro, Scavone to Vardon, and Niro, Scavone's document seven, the November 14th letter from Niro, Scavone to Vardon. In addition, the following documents need not be produced as the certificate of service on each one indicates that Vardon has already produced it to opposing counsel: (24) the October 30th letter to Judge Kocoras, (25) the October 30th letter to Judge Coar, and (26) the October 30th letter to Judge Zagel.

## IV. CONCLUSION

For the above mentioned reasons, Vardon has waived the attorney client-privilege protection and the work product privilege over the subject matter discussed in its petition for writ of mandamus. This Court finds that Vardon's voluntary disclosure waived the attorney-client privilege protection over the subject matter of those communications. Those subject matters are: 1) Niro, Scavone's or Vardon's identification of prior art references that Vardon or Allen knowingly and intentionally failed to bring to the attention of the U.S. Patent Office; 2) Niro, Scavone's accusations that Vardon or Allen failed to call prior patents to the attention of the U.S. Patent Office; 3) Vardon's attempts to force Niro, Scavone to continue to enforce patent rights which Niro, Scavone has concluded may be invalid in light of the prior art cited by Karsten and 4) that Niro, Scavone had full and complete knowledge of Vardon's acts, conduct, and prior art since "late 1999" with regards to the patent applications before the U.S. Patent Office. The Court's definition of the scope of the subject matter is narrowly defined

to provide fundamental fairness in the litigation. The documents shall be produced to Karsten's counsel within 14 days of this order. A copy of the items produced shall be delivered to the Court but not filed. **Karsten's motion to compel is granted in part and denied in part.**

**SO ORDERED THIS 28th DAY OF MARCH, 2003.**

_Morton Denlow_

**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

Dillis V. Allen
1080 Nerge Road, #205
Elk Grove Village, IL 60007

Keith Vogt
NIRO, SCAVONE, HALLER & NIRO
181 West Madison Street
Suite 4600
Chicago, IL 60602

Attorneys for Plaintiff

Walter Jones, Jr.
Carole A. Corns
PUGH, JONES & JOHNSON, P.C.
180 North LaSalle Street
Suite 2910
Chicago, IL 60601-2700

Lawrence G. Kurland
David Roodman
Roxana Wizorek
BRYAN CAVE, LLP
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, MO 63102-2750

Attorneys for Defendant